# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**KAREN RUSSELL**,

        **Plaintiff**,

v.

**CATHOLIC HEALTHCARE
PARTNERS EMPLOYEE LONG
TERM DISABILITY PLAN, et al.**,

        **Defendant**.

Case No.1:11-cv-188
Weber, District Judge
Wehrman, Magistrate Judge

## REPORT AND RECOMMENDATION

Before the Court are dueling motions in an ERISA case. On March 23, 2012, plaintiff, Karen Russell, filed a motion for a judgment reversing the administrative decision denying her long-term disability benefits. Doc. 23. Defendants, Catholic Healthcare Partners Employee Long Term Disability Plan ("the Plan") and Unum Life Insurance Company of America ("Unum"), responded in opposition, and plaintiff replied. Docs. 31, 34. Meanwhile, on the same day that plaintiff filed her motion, defendants filed their own motion to uphold the administrative decision (Doc. 25), to which plaintiff responded (Doc. 32), and defendants replied (Doc. 33). The Court will address both motions in this report and recommendation.

## I. Facts and Procedural Posture

Plaintiff worked as a registered nurse/nurse manager for nearly three decades, the last three years, from 2004-2007, for Catholic Healthcare Partners at its Mercy Hospital Anderson location. Doc. 23 at 9. As an employee of Catholic Healthcare Partners, plaintiff was enrolled in and a beneficiary of the defendant Plan, an employee welfare benefits plan regulated by the Employee Retirement Income Security Act of 1974, commonly called ERISA. Defendant Unum

is the insurer of benefits of the Plan and the Plan fiduciary. *Id*. at 2. The insurance coverage under the Plan derives from Group Policy Number 531706 ("the Policy"), which Unum issued to Catholic Healthcare Partners. Doc. 25 at 1.

On May 12, 2007, plaintiff sought long term disability benefits under the Plan, alleging disabling anxiety, depression, and leg and ankle osteoarthritis. Doc. 23 at 9, Doc 9 at 5[1]. On November 12, 2007, Unum confirmed plaintiff was disabled due to various mental health problems. Doc. 9 at 347. For disability due to mental illness, however, the Plan only provides twelve months of benefits. When they expired, plaintiff sought benefits for her physical problems. Doc. 9 at 195.

To receive long term disability benefits for physical ailments, the Plan creates a two-step definition of "disabled." A claimant is entitled to twenty-four months of benefits if she meets the first definition of "disabled:" "you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury, and you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury." Doc. 9 at 190. To receive benefits exceeding twenty-four months, a claimant must meet the second definition of "disabled:" "[when] due to the same sickness or injury you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." *Id*.

Following the exhaustion of her benefits based on her mental illness, defendant Unum approved plaintiff's claim for benefits under the first-step definition of disability based on her

---

[1] The administrative record is found in Doc. 9. The pages cited correspond to the Bates Stamp numbers at the bottom right-hand corner of the pages.

physical ailments.² Doc. 9 at 957. When that period expired, plaintiff had to qualify under the second-step definition of "disabled" to continue to receive long term disability benefits. On October 29, 2009, defendant Unum informed plaintiff that she did not meet the second-step definition of "disabled" and therefore would cease receiving long term disability benefits. *Id*. at 1255-60. Unum denied plaintiff benefits in a six page letter describing its decision. Unum recounted plaintiff's medical history, noting that both her treating orthopedist and her primary care physician believed plaintiff could perform modified sedentary work. Doc. 9 at 1256. Unum also identified two jobs for which plaintiff was both qualified and capable of performing. *Id*.

On April 1, 2010, plaintiff's counsel sent Unum a letter appealing the decision, together with additional medical reports plaintiff believed bolstered her disability claim. Doc. 9 at 1285-91. Unum denied plaintiff's appeal on July 20, 2010, citing similar reasons for its initial denial. *Id*. at 1466-72. Unum again noted that, though plaintiff has "traumatic arthritis" in her right ankle and is not a candidate for surgery, her specialist, Dr. Raines, "responded to a narrative request sent to him and indicated that [plaintiff] could perform 'a sit down duty' job." *Id*. at 1467. Her internist, Dr. McElroy-Marcus, opined that plaintiff has "knee osteoarthritis" and bilateral Carpal Tunnel Syndrome, yet Unum discounted her opinion as unsupported by independent testing or other evidence. *Id*. A physician contracted by Unum reviewed plaintiff's file and concluded she could perform at least sedentary work. *Id*. at 1467-68. The physician criticized Dr. McElroy-Marcus' opinion that plaintiff had severe osteoarthritis in both knees and chronic low pack pain as not supported by her own medical records (which reveal a lack of

---

²Because she had already received twelve months of benefits for her mental illness, plaintiff could only receive twelve months of benefits for her physical ailments under this first-step disability definition. *Id*. at 958; 1256.

documentation of complaints, examination findings, or referrals to specialists) or diagnostic tests. *Id*. at 1468. Unum's reviewing physician also discounted a Functional Capacity Evaluation from December 2009 that found plaintiff to be essentially disabled. The physician considered it of little value because it was not accompanied by validity testing and the evaluator did not report plaintiff's effort and cooperation. *Id*. The reviewing physician did believe plaintiff would be impaired by ankle arthritis, made worse by her obesity, but he did not believe it to be disabling. *Id*.

On March 30, 2011, plaintiff filed suit in federal court pursuant to 29 U.S.C. § 1132 for breach of ERISA, 29 U.S.C. § 1001 *et seq*., seeking to restore her long term disability benefits, plus fees and costs. Doc. 1. On March 23, 2012, both parties filed dueling motions: plaintiff's to reverse the administrator's decision denying benefits (Doc. 23) and defendants' to uphold the decision (Doc. 25).

## II. Defendants' Procedural Arguments

Defendants argue that plaintiff's suit should be dismissed because it is time barred. Doc. 25 at 7. While ERISA does not contain a statute of limitations for claims to recover benefits under 29 U.S.C. § 1132(a)(1)(B), the Policy itself - a contract between the parties - contains a limitations provision. It states, "you can start legal action regarding your claim 60 days after proof of claim has been given or up to 3 years from the time proof of claim is required unless otherwise provided under federal law." Doc. 9 at 188.

The Sixth Circuit has held, "[w]hen a federal statute contains no limitations period, we normally borrow the limitations period from the most 'analogous' state or federal law. However, choosing which statute to borrow is unnecessary when the parties have contractually agreed on a

4

limitations period and that limitations period is reasonable." *Medical Mut. of Ohio v. k. Amalia Enterprises Inc.*, 548 F.3d 383, 390 (6th Cir. 2008) (citations omitted). In the same vein, the Court has counseled, "the plain language of an ERISA plan should be given its literal and natural meaning [and] federal courts may not apply common law theories to alter the express terms of written benefits plans." *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997) (quoted in *Rice v. Jefferson Pilot Financial Ins. Co.*, 578 F.3d 450, 455 (6th Cir. 2009)).

While a three-year contractual limitations period in an ERISA contract appears reasonable, and has been found so by the Sixth Circuit (s*ee Rice*, 578 F.3d at 454), the more precise question at issue concerns the date plaintiff's ERISA claim accrues. As stated *supra*, the Policy permitted plaintiff to "start legal action regarding [her] claim 60 days after proof of claim has been given or up to 3 years from the time proof of claim is required." Doc. 9 at 188. Under the Plan, proof of claim is required "no later than 90 days after [the] elimination period." *Id*. at 181. The elimination period is six months. *Id*. at 190. Plaintiff's long term disability began on May 12, 2007. *Id*. at 5. Therefore, plaintiff's elimination period ended six months later, on November 12, 2007, and proof of claim was required ninety days thereafter, on February 10, 2008, making that the accrual date under the Policy. *See* Doc. 25 at 8. Thus, the contractual limitations period ended three years later on February 10, 2011, yet plaintiff did not file suit until March 30, 2011. Thus, defendants argue plaintiff's claim is time barred and should be dismissed accordingly. *Id.*

Plaintiff presents multiple arguments against dismissing her claim as untimely. First, plaintiff asserts that the Policy's terms regarding the accrual period are ambiguous and/or misleading, for several reasons. Doc. 32 at 2-3. She argues that the pertinent language laying

5

out the accrual and limitations period ends with the odd clause, "unless otherwise provided under federal law" - odd because there is no federal law providing an accrual or limitations period for ERISA claims. *Id*. at 188. Plaintiff asks the Court to interpret the phrase as importing the most analogous Ohio state law statute of limitations, which, as stated *supra*, is what federal courts normally use in the absence of a federal statute of limitations. In that case, plaintiff's suit would be timely. Doc. 32 at 3.

Yet, just as Magistrate Judge Kemp of this District Court's Eastern Division found this argument unpersuasive, so does this Court. *See White v. Worthington Industries, Inc. Long Term Disability Plan*, 266 F.R.D. 178, 188 (S.D. Ohio 2010). As Judge Kemp put it, "The phrase 'federal law' is not typically interpreted to mean 'state law,' nor is that the plain meaning of that phrase. Further, if the language means what [plaintiff] says it means, there would have been no point in specifying a three-year limitations period in the plan. The plan may just as well have said that the state statute of limitations applies in every case." *Id*. The phrase seems quite clearly to have been added as a failsafe in the event Congress enacts a statute of limitations or a Circuit Court forbids contractual limitations in ERISA contracts. Because neither has to date occurred, the failsafe is of no import in this case. It does not, however, render the limitations period ambiguous or misleading. This argument is unavailing.

Plaintiff next argues that the Policy's statement that she "can start legal action regarding [her] claim 60 days after proof of claim has been given" is also misleading and inaccurate, since she had to exhaust her administrative remedies before she could file suit. Doc. 32 at 3. This argument too is unpersuasive. The language only contractually creates a short time period when plaintiff may not institute legal action after offering proof of her claim. That federal law requires

6

her to exhaust all administrative remedies is a separate matter. The Court does not believe this language is misleading.

Plaintiff then argues that her suit was timely under still another contractual provision. The contract requiring plaintiff to notify Unum of a claim states:

> We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the time your disability begins. However, you must send Unum written proof of claim no later than 90 days after your elimination period. If it is not possible to give proof of claim within 90 days, it must be given no later than 1 year after the time proof of claim is otherwise required except in the absence of legal capacity.

Doc. 9 at 181; Doc. 32 at 4. Plaintiff maintains that she did not submit her proof of claim seeking long term disability benefits as a result of her physical ailments within the ninety day span following her elimination period (which would be February 10, 2008), so the second one-year accrual date applies. Doc. 32 at 4.

Defendants point out that this definition encompasses two distinct concepts and that the former only applies to plaintiff, as she has not shown that it was not possible to give proof of claim within 90 days. Doc. 33 at 7. The Court agrees that plaintiff's situation does not place her into the one-year accrual period.

Finally, instead of arguing that the language is misleading or ambiguous, plaintiff's more cogent argument against dismissing her case on procedural grounds is that she did not merely file one continuous claim beginning on May 12, 2007; she actually filed three separate disability claims under the Plan, the last on or about October 28, 2009. Doc. 32 at 6-8. According to this argument, plaintiff's first claim was related to her mental illness and filed on May 12, 2007. Unum accepted the claim on November 12, 2007, but the Plan only allowed for twelve months of

7

disability payments for mental illness. Plaintiff avers, "it would be illogical to start the statute of limitations during the time this mental illness disability was awarded." Doc. 32 at 6. When those payments expired, plaintiff filed her second claim, this time for disability related to her physical ailments. Unum approved the claim on November 14, 2008 (Doc. 9 at 956-59), but only for an additional twelve months of payments under the first step of the definition of disability. *See supra* at p. 2. Again, plaintiff maintains it would make little sense for the contractual limitations clock to be running at this point, for why would the time to file a lawsuit to restore her disability benefits be accruing during a period in which plaintiff was approved for disability and receiving payments?

Plaintiff asserts, then, that her third claim was for physical disability under the second-step of the definition of disability. Throughout the time plaintiff received the second twelve-months worth of payments, plaintiff continued to correspond with Unum regarding her alleged disability. *See* Doc. 9 at 1255-60. These correspondences included, for instance, a June 3, 2008, letter from Unum, asking rhetorically, in bold, capital letters, "What information is needed as proof of your claim?" Doc. 9 at 592. On October 28, 2009, Unum denied plaintiff's disability claim and ceased payments. *Id*. at 1255-60. It is this claim that plaintiff believes should be the basis for calculating the contractual limitations period. Doc. 32 at 7. Plaintiff asserts that because Unum itself sought "proof of claim" from plaintiff at this time, it is clearly a separate claim with a separate accrual and limitations process. Moreover, starting the limitations clock at this point also makes logical sense, since it was only when Unum denied plaintiff benefits that she would think to file suit to have those benefits restored.

Defendants argue that plaintiff made only one claim, not three. They note that plaintiff

8

alleged physical ailments, including osteoarthritis, when she initially filed for benefits on May 12, 2007, and that Unum assigned a single claim number to plaintiff's file. Doc. 33 at 8-9. More importantly, however, they argue that the contract and applicable caselaw clearly dictate that the limitations period began to run on February 10, 2008. *Id.*

Of paramount importance is the Sixth Circuit's unambiguous admonition that courts enforce ERISA contracts as written, so long as the terms are reasonable. *See Rice*, 578 F.3d at 455. The accrual and limitations provisions are essentially identical to those upheld as reasonable by the Sixth Circuit. *Id.* Judge Kemp of this Court found this very contractual language to be reasonable. *White*, 266 F.R.D. at 192. Plaintiff has tried admirably to show that the contract is unreasonable, but to no avail.

Plaintiff's logical argument is difficult to resist. To wit, as the Seventh Circuit has put it, the accrual provision at issue is undoubtedly "better suited to the initial claim decision than it is to claims that are initially granted and subsequently terminated." This is undoubtedly true. The Seventh Circuit did not stop there, however, and neither can this Court: "but that fact is not controlling. A poorly drafted contract term is still a contract term." *Abena v. Metropolitan Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008) (cited in *White,* 266 F.R.D. at 192). There is no indication (and plaintiff does not so argue) that the contractual limitations period could have expired before plaintiff had the opportunity to sue in federal court, which would cast serious doubt on the reasonableness of the limitations provision. *See White v. Sun Life Assurance Co. of Canada*, 488 F.3d 240, 247-48 (4th Cir. 2007) (cited in *Rice*, 578 F.3d at 456). Indeed, in this case, after Unum denied her appeal on July 20, 2010, plaintiff had more than six months to institute this action before the limitations period expired on February 10, 2011. Instead, she filed

9

suit on March 30, 2011. Therefore, because the limitations period and accrual provisions are reasonable, plaintiff's suit is barred as untimely. Consequently, plaintiff is procedurally barred from challenging the administrative decision, and defendants' motion to uphold the administrative decision should be granted and plaintiff's motion to overturn the administrative decision should be denied.

### III. Conclusion

For the reasons stated above, **IT IS RECOMMENDED**:

The Court should **grant** defendants' motion to uphold the administrative decision [Doc. 25], **deny** plaintiff's motion to reverse the administrative decision [Doc. 23], and dismiss the case in its entirety.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 8th day of August, 2012.	s/ J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge